|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT TACOMA | |
| DeAngelo A Green,<br><br>                      Plaintiff,<br>  v.<br>Margaret Gilbert et al.,<br><br>                      Defendants. | CASE NO. 3:17-cv-05898-RBL-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: August 9, 2019 |

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants' Motion for Summary Judgment (the "Motion"). Dkt. 95.

After reviewing the relevant record, the Court finds Plaintiff has failed to state a claim for which relief can be granted as to his allegations Defendants failed to protect him, failed to properly discipline other inmates, and moved Plaintiff in and out of segregation. Therefore, the Court recommends Defendants' Motion (Dkt. 95.) be granted, and this case be closed.

## I.  Background

Plaintiff, an inmate housed at the Stafford Creek Corrections Center ("SCCC") at the time of the alleged constitutional violations,[1] alleges Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by: (1) failing to protect Plaintiff; (2) failing to discipline other inmates; and (3) moving Plaintiff in and out of segregation. Dkt. 78. The incidents relevant to this matter occurred on August 1, 2015 when Plaintiff and another inmate, Matthew Holt, engaged in a fight in Plaintiff's cell, and on November 26, 2015, when a different inmate, Codie Allen, attacked Plaintiff in the dining hall. Dkt. 78 at 13.

In the Complaint, Plaintiff named former SCCC Superintendent, Margaret Gilbert; Chief of the SCCC Intelligence and Investigations Unit ("IIU") Michael Gleason; SCCC Corrections Officers Clarence Kilwien, Richard D. Boling, and Richard W. Estes; and SCCC Sergeant Arlee Rothwell as defendants. Dkt. 78 at 7-8.

Defendants filed the Motion on May 9, 2019. Dkt. 95. On May 20, 2019, Plaintiff filed a Declaration in Support of the Third Amended Complaint, which Defendants interpreted as a Response to the Motion. Dkts. 105, 107. On May 30, 2019, Defendants filed a Reply. Dkt. 107. On May 30, 2019 and June 5, 2019, Plaintiff filed additional Responses to the Motion, which were duplicative of one another ("Second Response"). Dkts. 108, 110.[2] On June 5, 2019, Plaintiff filed a "Surreply/Response" to Defendants' Reply, which the Court ordered be stricken from the record. Dkts. 109, 111. On June 19 and 20, 2019, Plaintiff objected to the undersigned's Order Striking

---

[1] Plaintiff was housed at SCCC from 2011 to 2012 and again from 2015 to 2016, the period during which he alleges Defendants violated his constitutional rights. Dkt. 78 at 7.

[2] Because the Responses filed at docket numbers 108 and 110 are duplicative of one another, the Court will refer to the first filing at docket number 108 throughout this Report and Recommendation. *See* Dkts. 108, 110. Although the Second Response and the Reply were entered into the docket on the same day, Plaintiff signed the Second Response on May 29, 2019, prior to Defendants' Reply which was filed on May 30, 2019. Dkt. 108. Therefore, the Court does not consider the Second Response as an attempt to file an additional surreply.

1 | Surreply. Dkts. 111, 112, 114. The Court reset the noting date for the Motion to June 19, 2019
2 | pending District Judge Ronald B. Leighton's determination of Plaintiff's objections. *See* Dkt. entry
3 | dated June 24, 2019. On July 9, 2019, Judge Leighton denied Plaintiff's objections. Dkt. 117. The
4 | Motion is now ready for review.

5 | **II.    Standard of Review**

6 | Summary judgment is proper only if the pleadings, discovery, and disclosure materials on
7 | file, and any affidavits, show there is no genuine dispute as to any material fact and the movant is
8 | entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to
9 | judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an
10 | essential element of a claim in the case on which the nonmoving party has the burden of proof.
11 | *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial
12 | where the record, taken as a whole, could not lead a rational trier of fact to find for the
13 | nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)
14 | (nonmoving party must present specific, significant probative evidence, not simply "some
15 | metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a
16 | material fact exists if there is sufficient evidence supporting the claimed factual dispute,
17 | requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*
18 | *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d
19 | 626, 630 (9th Cir. 1987).

20 | **III.    Discussion**

21 | Plaintiff contends Defendants failed to protect him from the August 1, 2015 fight and
22 | November 26, 2015 attack, failed to discipline other inmates, and moved him in and out
23 |
24 |

segregation. Dkt. 78. Defendants argue Plaintiff fails to state a claim upon which relief can be granted and they are entitled to qualified immunity. Dkt. 95.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners. *Id.* at 833. However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834.

In cases alleging an Eighth Amendment violation based on a failure to prevent harm, the plaintiff must first meet an objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). The plaintiff must also meet a subjective component by showing the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

REPORT AND RECOMMENDATION - 4

A. <u>August 1, 2015 Fight</u>

    i.    Evidence

On August 1, 2015, inmate Mr. Holt came into Plaintiff's cell and assaulted Plaintiff. Dkt 78 at 8.[3] Seven corrections officers, including Defendants Kilwien and Rothwell, responded to the radio call of a fight in Plaintiff's cell. Dkt. 100 (Declaration of Defendant Gleason) at ¶ 5-8, Attachments A and B; Dkt. 103 (Declaration of Defendant Kilwien) at ¶ 3, Attachment A; Dkt. 104 (Rothwell Declaration) at ¶ 4, Attachment A. The responding officers separated the two inmates and took Mr. Holt to the SCCC medical clinic and Plaintiff to segregation. Dkt. 78 at 8. Plaintiff denied the fight and denied any pain or discomfort. Dkt. 97 (Declaration of Elmo Animas) at ¶ 5, Attachment A. On physical examination, Nurse Animas found a one-inch scratch on Plaintiff's right shoulder which was not bleeding. *Id.*

Mr. Holt stated he hit Plaintiff because Plaintiff made a sexual demand, so he had to "fuck or fight" and during the fight Plaintiff tried to rape him. Dkt. 100 (Declaration of Defendant Gleason) at ¶ 5, Attachment A. After the incident and while Plaintiff was housed in segregation, Defendant Gleason met with Plaintiff and discussed Mr. Holt's accusation. Dkt. 78 at 8; Dkt. 100, (Declaration of Defendant Gleason) at ¶ 7. At the meeting, Defendant Gleason gave Plaintiff a confidential telephone number and told Plaintiff to call him with any further information about the incident or confidential information regarding safety or facility concerns.

---

[3] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). In this case, Plaintiff attested under penalty of perjury the contents of the following documents are true and correct: Complaint (Dkt. 78), Response (Dkt. 105), and Second Response (Dkt. 108). Thus, the Court will consider these pleadings in ruling on Defendants' Motion.

*Id.* Mr. Holt later recanted his accusation about the attempted rape and was infracted for making a false claim. Dkt. 100 (Declaration of Defendant Gleason), Attachment A at 1.

After conducting an investigation of the August 1, 2015 fight, Defendant Gleason determined Plaintiff had been giving small gifts to Mr. Holt and letting Mr. Holt use his telephone PIN number. *Id.* at ¶ 8. Several days before the incident, Plaintiff demanded Mr. Holt pay him for these gifts and told Mr. Holt if he didn't have the money, he could give Plaintiff a "blow job" as payment for the gifts. *Id.*, Attachment A. Defendant Gleason concluded Mr. Holt confronted Plaintiff about this sexual demand, which led to their fight on August 1, 2015. *Id.* On November 13, 2015, after a hearing, Mr. Holt was found guilty of assaulting Plaintiff and sanctioned to 30 days of segregation and 30 days loss of good time conduct. *Id.* at ¶ 9, Attachment C.

After the August 1, 2015 fight, the interactions between Plaintiff and Mr. Holt continued. According to Plaintiff, other inmates asked him if he had raped Mr. Holt. Dkt. 78 at 8. Plaintiff spoke to SCCC mental health professionals because he was upset by these confrontations. *Id.* at 9, 11. Plaintiff expressed his concerns to Defendant Gleason about Mr. Holt's gang relations, rape accusations, and lies to other offenders. Dkt. 100 (Declaration of Defendant Gleason) at ¶ 10, 11.

Mr. Holt filed Prison Rape Elimination Act ("PREA") complaints against Plaintiff. Dkt. 100 (Declaration of Defendant Gleason) at ¶ 16. Mr. Holt alleged Plaintiff obtained the phone number for Mr. Holt's brother, asking if Mr. Holt had come out as being homosexual. Dkt. 78 at 9; Dkt. 100 (Declaration of Defendant Gleason) at ¶ 16. Plaintiff also sent "boomerang" style letters containing illicit content, including naked pictures of women, to Mr. Holt. Dkt. 78 at 12; Dkt. 100 (Declaration of Defendant Gleason) at ¶ 16. Defendant Gleason investigated these

1  complaints and found Plaintiff was guilty of sexual misconduct. Dkt. 78 at 10, Dkt. 100
2  (Declaration of Defendant Gleason) at ¶ 16, Attachments D and E. Plaintiff was sanctioned to 20
3  days in segregation. *Id.*

4        ii.      Analysis

5        With respect to the August 1, 2015 fight, Plaintiff only alleges claims against Defendants
6  Gilbert and Gleason. *See* Dkt. 78. Plaintiff alleges he sent letters to Defendant Gilbert surrounding
7  Mr. Holt's false PREA claims, and Defendants Gilbert and Gleason should have transferred Mr.
8  Holt or Plaintiff once Mr. Holt filed the PREA actions against Plaintiff. Dkt. 78 at 14. Plaintiff
9  alleges Defendant Gilbert failed to prevent Mr. Holt from sending out "falsehood[s]" and
10 "basically giving Mr. Holt permission to exercise out of his lies." Dkt. 78 at 18. Plaintiff alleges
11 Defendant Gleason violated Plaintiff's constitutional rights by placing him in and out of
12 segregation within two months. Dkt. 78 at 15. Plaintiff also alleges Defendant Gleason demanded
13 Plaintiff withdraw a complaint against Defendant Rothwell and end a request for public
14 disclosure related to Mr. Holt. Dkt. 78 at 14; Dkt. 105 at 9-10. Defendants argue Plaintiff has
15 failed to state a claim against Defendants Gilbert and Gleason because they cannot be held liable
16 for discretionary disciplinary and housing decisions they make or approve. Dkt. 95 at 11-12.

17       At the time of the events at issue in this matter, Defendants Gilbert and Gleason were in
18 supervisory positions. During 2015 Defendant Margaret Gilbert was the Superintendent of
19 SCCC. Dkt. 78 at 7. Defendant Michael Gleason was in 2015 and still is the Chief of the SCCC
20 IIU. Dkt. 78 at 7. Defendant Gilbert reviewed and approved disciplinary reports and housing
21 assignments of inmates within the SCCC and other correctional facilities. *See* Dkt. 78; Dkt. 95 at
22 12. Defendant Gleason investigated the August 1, 2015 fight between Plaintiff and Mr. Holt.
23 Dkt. 100 (Declaration of Defendant Gleason) at ¶ 5. Defendant Gleason conducted interviews
24

and reviewed written staff reports, video tapes and other documents. *Id.* at ¶ 5, 7, Attachment A. Defendant Gleason also met with Plaintiff in segregation and discussed Mr. Holt's rape accusations. *Id.* at ¶ 7. Defendant Gleason determined on August 1, 2015, Mr. Holt confronted Plaintiff about a sexual demand, which led to their fight. *Id.* On November 13, 2015, Mr. Holt was found guilty of assaulting Plaintiff, sanctioned to 30 days of segregation and 30 days loss of good conduct time. *Id.* at ¶ 9, Attachment C. Plaintiff was later found guilty of sexual misconduct related to Mr. Holt's PREA complaints, the calls to Mr. Holt's brother, and "boomerang" letters and sanctioned to 20 days of segregation. Dkt. 78 at 10; Dkt. 100 (Declaration of Defendant Gleason) at ¶ 16, Attachment E. Plaintiff does not dispute this evidence, nor does he argue Defendants Gilbert and Gleason had knowledge of a specific harm to Plaintiff with respect to Mr. Holt and acted with deliberate indifference to that harm.

Instead, Plaintiff argues Defendants Gilbert and Gleason are liable based on Plaintiff's dissatisfaction with their decisions *after* the August 1, 2015 fight based on where to house Plaintiff and Mr. Holt, how to discipline Mr. Holt, and Plaintiff's placement in and out of segregation.[4] Dkt. 78 at 14, 15.

However, Plaintiff does not have a constitutionally protected interest in the way in which prison officials handle his complaints or appeals. *See Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) (Actions in

---

[4] Defendants argue Plaintiff's failure to protect claims only arise under the Eighth Amendment, and not the Fourteenth Amendment. Dkt. 95 at 10-11. However, the Court finds Plaintiff's claims related to the August 1, 2015 fight are properly analyzed under both the Eighth and Fourteenth Amendments because Plaintiff's allegations related to his placement in segregation implicate due process rights under the Fourteenth Amendment, and these claims are not subsumed by the Eighth Amendment. Plaintiff's equal protection claim will be discussed below, *see* Section I.C.

reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action); *Hinojos v. Uekert,* 2007 WL 613936, at *4 (E.D. Cal. Feb. 27, 2007), *report and recommendation adopted,* 2007 WL 2462047 (E.D. Cal. Aug. 27, 2007) (Even a warden's failure to investigate after the fact is not a violation of the plaintiff's constitutional rights.); *See Young v. Oregon,* 2015 WL 1883929, at *2 (D. Or. Apr. 22, 2015), *aff'd,* 668 Fed. Appx. 314 (9th Cir. 2016) (The failure to discipline other inmates fails to state a constitutional claim.). Inmates also have no constitutional right to be incarcerated in a particular prison, and a transfer from one institution to another within a state's prison system does not implicate due process. *Meachum v. Fano,* 427 U.S. 215, 225 (1976); *Myron v. Terhune*, 476 F.3d 716, 719 (9th Cir. 2007).

To the extent Plaintiff alleges his placement in segregation after the August 1, 2015 fight and disciplinary sanction of 20 days of segregation following his infraction for sexual misconduct violated his due process rights, Plaintiff has no liberty interest in classification or placement in segregation. *Hernandez v. Johnston,* 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Daggett,* 429 U.S. 78 (1976) (a prison inmate has no constitutional right to a particular classification or custody level)); *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995), *as amended*, 75 F.3d 448 (9th Cir. 1995) (hardship associated with administrative segregation, such as confinement to one's cell for a lengthy period of time, does not violate the Due Process Clause because there is no liberty interest in remaining in general population). In addition, there is no evidence the conditions of his segregation amounted to an atypical or significant hardship in relation to the ordinary incidents of prison life, which would implicate a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Except for citing the Fourteenth Amendment, Plaintiff provides no arguments relating to specific, separate due process violations. Plaintiff also does not allege any facts demonstrating his placement in

1  segregation amounted to cruel and unusual punishment or Defendants Gilbert or Gleason were
2  deliberately indifferent to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 832.

3  With respect to Plaintiff's allegations Defendant Gleason demanded he withdraw a
4  complaint against Defendant Rothwell and end a public disclosure request, the relevance of these
5  claims is unclear, and Plaintiff does not allege the constitutional or statutory basis for them. Dkts.
6  78, 108. However, it is clear these events occurred *after* the August 1, 2015 fight between
7  Plaintiff and Mr. Holt, and these allegations do not demonstrate any constitutional violations,
8  including whether Defendant Gleason "[knew] of and disregard[ed] an excessive risk to inmate
9  health or safety." *Farmer*, 511 U.S. at 832.

10  Accordingly, the undersigned recommends Defendants Motion related to claims against
11  Defendants Gilbert and Gleason and their involvement in the August 1, 2015 fight be granted,
12  and these claims be dismissed with prejudice.

13  B. November 26, 2015 Attack

14  i.   Evidence

15  Plaintiff had a close relationship with another inmate, Mr. Allen. Dkt. 78 at 9. The two
16  worked out together and discussed sexuality, Mr. Allen's crimes, and a need to change their
17  lives. *Id.* The two worked to create a program called "Change your game." Dkt. 78 at 10.
18  Plaintiff stated Mr. Allen "loved to be around" him. Dkt. 78 at 11. In October 2015, Mr. Allen
19  told Plaintiff other Native American inmates expressed concerns about his friendship with
20  Plaintiff, and Mr. Allen said he would continue to see Plaintiff. Dkt. 78 at 10. A few weeks prior
21  to the attack, Plaintiff noticed Mr. Allen distanced himself from Plaintiff. Dkt. 78 at 11. Plaintiff
22  alleges Mr. Allen then confronted Plaintiff about his past, especially Plaintiff's past relationships
23  with white males. Dkt. 78 at 11. After this conversation, Plaintiff decided to leave Mr. Allen
24

1 alone, stating "Mr. Allen was mad at himself for giving the Natives so much power in his life."
2 *Id.*

3   On November 26, 2015, Plaintiff was leaving the dining hall when he was attacked by
4 Mr. Allen. Dkt. 78 at 3. Defendant Kilwien saw the attack and called in a report of a fight on the
5 radio. Dkt. 78 at 13. Defendant Kilwien found Plaintiff in a pool of blood and started attending to
6 him and by this time, Mr. Allen had left the dining hall. Dkt. 103 (Declaration of Defendant
7 Kilwien) at ¶ 5, Attachment B. Plaintiff was knocked unconscious after receiving punches and
8 cuts to his face. Dkt. 78 at 13; Dkt. 100 (Declaration of Defendant Gleason) at ¶ 17.

9   Defendants Boling, Estes, and Rothwell responded to the radio call and arrived at the
10 scene. Dkt. 98 (Declaration of Defendant Boling) at ¶ 3, Attachment A; Dkt. 99 (Declaration of
11 Defendant Estes) at ¶ 3, Attachment A; Dkt. 104, (Declaration of Defendant Rothwell) at ¶ 5,
12 Attachment B. By the time Defendants Boling, Estes, and Rothwell arrived, the attack had
13 ended. *See id.* Defendants Boling and Estes gave verbal directives to non-involved inmates,
14 moved non-involved inmates away from the incident scene, and placed inmates in lock down in
15 their cells as necessary. Dkt. 98 (Declaration of Defendant Boling) at ¶ 3; Dkt. 99 (Declaration of
16 Defendant Estes) at ¶ 3.

17   Defendant Rothwell, along with medical personnel, escorted Plaintiff to the medical
18 clinic for observation and treatment. Dkt. 104 (Declaration of Defendant Rothwell) at ¶ 5.
19 Defendant Rothwell and non-party Officer Schneider-Wiss went to Mr. Allen's cell and
20 conducted a "knuckle and torso check" on him. *Id.* Defendant Rothwell found Mr. Allen's
21 knuckles were red and scratched from a recent injury, and he believed these injuries were
22 indicators of being involved in an altercation. *Id.* Mr. Allen was placed in administrative
23 segregation pending an investigation of his assault on Plaintiff. *Id.*

24

1     Defendant Gleason investigated the November 26, 2015 fight. Dkt. 100 (Declaration of Gleason) at ¶ 17, Attachments G, H. Defendant Gleason determined Mr. Allen assaulted Plaintiff from behind in an unprovoked, blindside attack. *Id.* Mr. Allen admitted to the attack and claimed he was provoked because he believed Plaintiff had been grooming him for "something else" though Mr. Allen admitted Plaintiff had not been specific as to any intent of exploitation. *Id.* Mr. Allen was found guilty of assaulting Plaintiff and received sanctions including 30 days in segregation, 30 days loss of good conduct time, and 20 days loss of privileges. *Id.*

    Plaintiff alleged Mr. Allen stabbed him with a weapon. Dkt. 78 at 13. No weapon was found at the scene. Dkt. 100 (Declaration of Defendant Gleason) at ¶ 17. Defendant Gleason could not conclude Mr. Allen used a weapon in attacking Plaintiff. *Id.*

    Two days after the attack, on November 28, 2015, Defendant Rothwell received a call from Mr. Allen's mother. Dkt. 104 (Declaration of Rothwell) at ¶ 7, Attachment C. She told Defendant Rothwell she had received phone calls from Mr. Allen's PIN number, but it was Plaintiff on the phone, who wanted to talk to her about her son. *Id.* She asked to have Plaintiff stop all contact with her and with Mr. Allen. *Id.* Plaintiff was transferred to another corrections facility. Dkt. 78 at 7.

    Plaintiff alleges Defendants Kilwien, Boling, Estes and Rothwell should have prevented the November 26, 2015 assault and violated his constitutional rights in not doing so. Dkt. 78 at 15-18. Specifically, Plaintiff alleges Defendant Kilwien failed to take reasonable steps to protect Plaintiff from being attacked on November 26, 2015 by not catching Mr. Allen as he left the dining hall after the attack. Dkt. 78 at 16. Plaintiff alleges Defendants Boling and Estes failed to assist and protect Plaintiff from the assault. Dkt. 78 at 13, 16, 17. Plaintiff alleges Defendant

Rothwell misplaced Plaintiff's eyeglasses, initially accused the wrong inmate as the assailant, and acted unprofessionally towards Plaintiff. Dkt. 78 at 14, 17-18.

ii.     Analysis

Defendants allege there is no genuine issue of material fact regarding whether Defendants acted with deliberate indifference when Plaintiff was attacked in November 2015 by Mr. Allen. Dkt. 95 at 12-13.

The parties do not dispute the attack on Plaintiff by Mr. Allen meets the objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm."[5] *Farmer*, 511 U.S. at 834. Nevertheless, Plaintiff must also meet a subjective component by showing Defendants acted with deliberate indifference to his health or safety. *Id*.

a.     Defendants Rothwell, Kilwien, Estes, and Boling

Here, the evidence shows Plaintiff was assaulted by Mr. Allen in a blindside attack. As soon as the fight began, Defendant Kilwien radioed for additional correctional officers to respond to the fight. Defendants Boling, Estes, and Rothwell arrived at the dining hall where the assault occurred. When they arrived at the dining hall, the attack on Plaintiff had already happened. All other inmates were complying with the directives of the correctional officers. Defendant Rothwell escorted Plaintiff to the medical clinic for observation and treatment.

---

[5] Here, with respect to the November 26, 2015 attack, although Plaintiff also cites to the Fourteenth Amendment, the Eighth Amendment provides the source for Plaintiff's constitutional claims. The Fourteenth Amendment does not provide any additional relief with respect to Plaintiff's failure to protect claim and Plaintiff does not allege act facts demonstrating a due process violation with respect to the November 26, 2015 attack. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman,* 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), overruling on other grounds recognized by *Nitco Holding Corp. v. Boujikian,* 491 F.3d 1086, 1089–90 (9th Cir. 1997).

1     The evidence shows Defendants Rothwell, Kilwien, Estes, and Boling did not fail to
2 protect Plaintiff. There is no evidence or allegations that these four Defendants were aware
3 Plaintiff faced any threat to his safety prior to the fight. Plaintiff does not allege he informed
4 Defendants Rothwell, Kilwien, Estes, or Boling about any of the conversations he had with Mr.
5 Allen. *See* Dkt. 78. Plaintiff does not allege he considered Mr. Allen to be a threat to him at any
6 time. *See* Dkt. 78. Plaintiff made no such statements to Defendants Rothwell, Kilwien or Estes.
7 Dkt. 98 (Declaration of Boling) at ¶ 7; Dkt. 99 (Declaration of Estes) at ¶ 7; Dkt. 103
8 (Declaration of Kilwien) at ¶ 9; Dkt. 104 (Declaration of Rothwell) at ¶ 8.
9     Additionally, there is no evidence showing these four Defendants acted with deliberate
10 indifference once they became aware of the attack. Once he saw the attack, Defendant Kilwien
11 responded immediately, requesting assistance. Defendants Rothwell, Estes, and Boling arrived at
12 the scene, responded to Plaintiff's medical needs, and provided directives to the other inmates.
13 The non-involved inmates in the dining hall were secured. Therefore, the Court finds there is no
14 evidence showing Defendants Rothwell, Kilwien, Estes, and Boling acted with deliberate
15 indifference or failed take reasonable measures to stop the inmate fight. *See Collins v. Kern*, 390
16 F.Supp.2d 964, 974-75 (E.D. Cal. 2005) (finding defendants were not deliberately indifferent
17 when the evidence showed they took prompt action to stop an inmate fight, secure the area, and
18 ensure the plaintiff received medical care); *Sanchez v. Andruss*, 2013 WL 3152395, at *4 (N.D.
19 Cal. June 19, 2013) (internal quotations omitted) ("Correctional officers who are present during a
20 violent altercation between prisoners are not deliberately indifferent if they intervene with a due
21 regard for their safety."); *George v. Uribe*, 2012 WL 993254, at *8-9 (S.D. Cal. Feb. 17, 2012)
22 (finding the plaintiff failed to state a failure to protect claim when one officer activated an alarm,
23 one officer responded to the alarm, and both provided verbal commands to stop fighting).
24

1    With respect to Plaintiff's allegations Defendant Rothwell misplaced Plaintiff's
2 eyeglasses, Plaintiff alleges Mr. Allen used Plaintiff's eyeglasses as a weapon and Defendant
3 Rothwell lost his eyeglasses as part of a "cover up." Dkt. 78 at 18. Plaintiff also alleges
4 Defendant Rothwell acted unprofessionally and initially identified the wrong assailant are also
5 without merit. Dkt. 78 at 18. Plaintiff does not dispute these actions occurred *after* the November
6 26, 2015 attack. Dkt. 78, 105. As such, none of these allegations show Defendant Rothwell was
7 aware of and acted with deliberate indifference to a risk of harm to Plaintiff. *See Farmer*, 511
8 U.S. at 834.

9    Moreover, the evidence contradicts Plaintiff's conclusory allegations. *See Nelson v. Pima*
10 *Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not
11 create a factual dispute for purposes of summary judgment). Non-party Corrections Unit
12 Supervisor Christopher Grubb determined Plaintiff's eyeglasses were found at the scene broken
13 and bloody, had been put into a hazard bag along with his identification and key, which was
14 taken to the medical clinic where it was likely disposed of for sanitary reasons. Dkt. 101
15 (Declaration of Christopher Grubb) at ¶ 3, Attachment A. Mr. Grubb advised Plaintiff to file a
16 tort claim to receive reimbursement for replacement eyeglasses because the DOC Grievance
17 Department did not handle such claims. *Id*. An unauthorized intentional deprivation of property
18 by a state employee, such as the case here, does not constitute a Fourteenth Amendment
19 violation if a meaningful post-deprivation remedy for the loss is available under state law. *See*
20 *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The State of Washington provides a meaningful
21 post-deprivation remedy for the intentional or negligent loss of property by state agents and
22 employees by allowing for a suit in Superior Court once a person has completed the state's tort
23 claim process. *See Magana v. Morgan*, 2016 WL 6111131, at *3 (W.D. Wash. Sept. 14, 2016)
24

1  (citing *Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. Wash. Mar. 27, 1986)); RCW 4.92.090-
2  .100; RCW 72.02.045(3)). As such, Plaintiff's allegations against Defendant Rothwell with
3  respect to his eyeglasses do not rise to the level of a due process violation actionable under §
4  1983.

5       Accordingly, the undersigned finds there is no genuine issue of material fact regarding
6  Plaintiff's allegation Defendants Rothwell, Kilwien, Estes, and Boling violated Plaintiff's Eighth
7  Amendment and Fourteenth Amendment rights during the attack on November 26, 2015.

8       b.  Defendant Gleason

9       With respect to Defendant Gleason, the undisputed evidence demonstrates Defendant
10 Gleason investigated the August 1, 2015 fight and subsequent complaints of sexual misconduct
11 between Mr. Holt and Plaintiff. Dkt. 78 at 8, 10, 11; Dkt. 100 (Declaration of Defendant
12 Gleason). Defendant Gleason conducted interviews and meetings with Plaintiff. *See id.* In his
13 Second Response, Plaintiff alleges he told Defendant Gleason about the fear of being labeled as a
14 rapist and asked Defendant Gleason to find a way to transfer Mr. Holt. Dkt. 108 at 13. Plaintiff
15 alleges he told Defendant Gleason about his conversation in the yard with Mr. Allen and the
16 importance of transferring Mr. Holt. Dkt. 108 at 14. Plaintiff then alleges he told Defendant
17 Gleason about his "danger." Dkt. 108 at 22, 28. On November 25, 2015, Plaintiff alleges an
18 inmate told Plaintiff to "be careful" and Plaintiff told Defendant Gleason about this "new
19 information." Dkt. 78 at 12. However, Plaintiff did not specifically discuss a fear or perceived
20 threat to his safety related to Mr. Allen. Dkt. 100 (Declaration of Defendant Gleason) at ¶¶ 12-
21 14. In his Complaint, Plaintiff admits the attack by Mr. Allen "blindside[d] me." Dkt. 78 at 15.

22      Defendant Gleason is not required to predict all inmate behavior; he is only required to
23 protect a prisoner from harm when is he aware of the harm or presented with facts from which an
24

inference can and should be drawn that a risk of harm exists. *See Farmer,* 511 U.S. at 837, 841–42 (a defendant may be liable if he has actual notice of conditions that pose a substantial risk of serious harm or if he is exposed to circumstantial evidence concerning the risk and "must have known" about it). Here, the evidence shows Defendant Gleason was not aware of any particularized threat of harm by Mr. Allen. Plaintiff's evidence establishes, at most, he communicated a generalized fear of "danger," being labeled as a rapist, and a desire for Mr. Holt to be transferred, but there is no evidence he communicated a specific fear for his safety from Mr. Allen to Defendant Gleason. Plaintiff's allegations demonstrate he had some general safety concerns, but these did not include any threats from Mr. Allen. Plaintiff does not allege he considered Mr. Allen to be a threat to him at any time. *See* Dkt. 78, 105, 108. There are no facts from which Defendant Gleason could infer a specific threat of harm from Mr. Allen to Plaintiff. That Plaintiff may have been in fear of an attack based on Mr. Holt's prior rape accusations does not subject Defendant Gleason to liability for failure to protect Plaintiff against Mr. Allen. Plaintiff has not come forward with any evidence establishing Mr. Allen was a documented enemy of Plaintiff's, in fact, Plaintiff admits he did not fear Mr. Allen, stating Mr. Allen "knew … how I walk away without fear." Dkt. 105 at 2, 7. Therefore, Plaintiff has failed to show there is a genuine issue of material fact regarding Defendant Gleason's alleged failure to protect Plaintiff when he was attacked by Mr. Allen. *See Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1161 (9th Cir. 2013) (finding no deliberate indifference where the evidence showed the plaintiff and another inmate were housed in general population together for an extended period of time with no problems, the inmate was not listed as a "separatee" for the plaintiff, and the plaintiff had fought with a member of the other inmate's gang but assured officers the fight was not gang related); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (before being

required to take action, the prison officer must have more than a "mere suspicion" an attack will occur).

### c. Defendant Gilbert

Plaintiff alleges Defendant Gilbert monitored the investigations unit and was responsible for the operations at SCCC. Dkt. 78 at 14. Plaintiff alleges Defendant Gilbert failed to provide leadership and supervision. *Id.* Plaintiff alleges Defendant Gilbert failed to correct misconduct, and failed to find a weapon was used in the attack by Mr. Allen. Dkt. 78 at 14.  Here, Plaintiff specifically states he is suing Defendant Gilbert because of her supervisory position. Dkt. 78 at 14, 18. He has not provided any allegations or evidence showing Defendant Gilbert had knowledge of any particularized risk of harm to Plaintiff or participated in or directed the alleged harm during the November 26, 2015 fight. A § 1983 claim cannot be based solely on a supervisor's relationship to her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Therefore, Plaintiff has not alleged sufficient facts to support a failure to protect claim against Defendant Gilbert. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (9th Cir. 1990) (the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"). Accordingly, Plaintiff has failed to show there is a genuine issue of material fact regarding Defendant Gilbert, and the Court finds the claims alleged against Defendant Gilbert should be dismissed.

### C. Equal Protection

Defendants argue Plaintiff fails to state a claim under the equal protection clause of the Fourteenth Amendment. Dkt. 95 at 11. While Plaintiff alleges a generalized violation of the Fourteenth Amendment, the specific basis for an equal protection claim is unclear. *See* Dkt. 78.

1    The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all
2 persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living*
3 *Center*, 473 U.S. 432, 439 (1985) (citation omitted). To bring a successful equal protection
4 claim, a plaintiff must show differential treatment from a similarly situated class. *See*
5 *Washington v. Davis*, 426 U.S. 229, 239 (1976). For this differential treatment to give rise to a
6 claim under § 1983, "one must show intentional or purposeful discrimination." *Draper v. Rhay*,
7 315 F.2d 193, 198 (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of
8 "intentional or purposeful discrimination").
9    Hence, for Plaintiff to prevail on an equal protection clause claim, Plaintiff must not only
10 show differential treatment by Defendant, but also that Defendant intentionally or purposefully
11 discriminated against him. *Id.* Plaintiff fails to allege how, and does not present any evidence
12 showing that Defendants purposefully or intentionally discriminated against him because
13 Plaintiff belongs to a protected class. Accordingly, the Court recommends granting Defendant's
14 Motion on Plaintiff's equal protection claim.

15    **IV.    Qualified Immunity**

16    Because the Court has already determined Defendants are entitled to summary judgment
17 as to all Plaintiff's underlying claims, the Court declines to determine whether Defendants enjoy
18 qualified immunity.

19    **V.    Conclusion**

20    Based on the foregoing, the Court recommends Defendants' Motion for Summary
21 Judgment (Dkt. 95) be granted and this case be closed.
22    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen
23 (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure
24 to file objections will result in a waiver of those objections for purposes of *de novo* review by the

1  district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R.
2  Civ. P. 72(b), the clerk is directed to set the matter for consideration on August 9, 2019 as noted in
3  the caption.

4  Dated this 15th day of July, 2019.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20